IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAYVON T. PACK, )
)
    Plaintiff, )
)
vs. ) Civil Action No. 20-1128
)
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant. )

ORDER

AND NOW, this 19th day of August, 2021, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 17) filed in the above-captioned matter on April 14, 2021,

IT IS HEREBY ORDERED that the Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 15), filed in the above-captioned matter on March 4, 2021,

IT IS HEREBY ORDERED that the Motion is GRANTED as set forth below. The Commissioner of Social Security's ("Commissioner") final decision is reversed, and this matter is hereby remanded to the Commissioner for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**I.    Background**

Dayvon T. Pack ("Plaintiff") filed an application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq.*, on September 23, 2016. (R. 12). Plaintiff's application was initially denied, and he requested a hearing before an Administrative Law Judge ("ALJ"). (R. 12). Plaintiff then appeared before an ALJ twice. At the first hearing, the ALJ postponed proceedings to permit Plaintiff to obtain counsel. (R. 519). Plaintiff's second appearance for a hearing before the ALJ took place on

April 24, 2019. (R. 12). On May 8, 2019, the ALJ issued his decision finding Plaintiff not disabled under the Act and denying his application for SSI. (R. 21). Plaintiff sought review of that decision before the Appeals Council, but that request was denied. (R. 1). Thus, the ALJ's decision became the final agency decision in this matter. 20 C.F.R. § 416.1481. Plaintiff has sought this Court's review of the agency's final decision, and now pending before the Court are Plaintiff and the Commissioner's summary judgment motions.

## II.     Standard of Review

To be upheld, the "ALJ's decision must be substantially supported by the evidence in the record." *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798, 800 (3d Cir. 2010); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (citing 42 U.S.C. § 405(g)) (explaining that the Commissioner's findings of fact are "conclusive" if supported by substantial evidence). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." *Thomas*, 625 F.3d at 800; *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Reviewing courts may not "re-weigh the evidence or impose their own factual determinations." *Chandler*, 667 F.3d at 359. However, "appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand" where substantial evidence is lacking. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

ALJs must "set forth the reasons for [their] decision[s]." *Thomas*, 625 F.3d at 800 (citing *Cotter v. Harris*, 642 F.2d 700, 704—705 (3d Cir.1981)).[1] When ALJs provide "conclusory

---

[1]     ALJs use "a five-step, sequential evaluation process" to evaluate disability. *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing 20 C.F.R. § 404.1520(a)). This is true for both Title XVI applications and Title II disability insurance benefits applications. *Ferguson v. Schweiker*, 765 F.2d 31, 36 n.4 (3d Cir. 1985); 20 C.F.R. § 416.920(a)(4); 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ ensures the claimant is not "doing substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ makes a finding as to whether the claimant has one or more "severe medically determinable physical or mental impairment[s]." *Id.*

statements" instead of a clear explanation of their findings, meaningful review becomes infeasible. *Id.* (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)). Adequate explanation includes "not only an expression of the evidence [the ALJ] considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705. If the ALJ fails to acknowledge the evidence he rejected and explain its rejection, reviewing courts "cannot tell if significant probative evidence was not credited or simply ignored." *Id.*

Where an ALJ's decision suffers from such a deficiency, a reviewing court may not "rectify errors, omissions or gaps . . . by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ." *Cefalu v. Barnhart*, 387 F. Supp. 2d 486, 491 (W.D. Pa. 2005). Rather, a reviewing court only "considers and reviews . . . those findings upon which the ALJ based the decision." *Id.* Accordingly, arguments offered in support of the ALJ's decision that were not "relied upon by the ALJ in his analysis" do not justify affirmance. *Velardo v. Astrue*, No. CIV.A. 07-1604, 2009 WL 229777, at *11 (W.D. Pa. Jan. 29, 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 43—44 and n. 7 (3d Cir. 2001) (citing *SEC v. Chenery Corporation*, 318 U.S. 80 (1943)).[2]

---

§ 416.920(a)(4)(ii). At step three, the ALJ must decide whether any of the claimant's "impairment(s) . . . meets or equals" one of the presumptively disabling impairments in "appendix 1 to subpart P of Part 404." *Id.* § 416.920(a)(iii). At steps four and five, the ALJ decides whether work is available to the claimant, either work he performed in the past or work that is appropriate for an individual of his age, education, work experience, and residual functional capacity ("RFC"). *Id.* § 416.920(a)(4)(iv)—(v).

[2]   While reviewing courts will not affirm an ALJ's decision based on rationale it cannot find therein, it is neither the case that every error requires remand. Where a reviewing court is confident that an ALJ error had no effect on the outcome of the case, remand is unwarranted. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (explaining that the harmless error doctrine permits affirmance where "it is predictable with great confidence that the agency will reinstate its decision on remand").

### III. The ALJ's Decision

In this matter, the ALJ found Plaintiff had not engaged in substantial gainful activity since his application date. (R. 14). The ALJ identified five severe, medically determinable impairments that afflicted Plaintiff—depression, generalized anxiety disorder, social anxiety disorder, ADHD, and borderline intellectual functioning. (R. 14). At step three of the five-step evaluation, the ALJ found that neither Plaintiff's impairments nor a combination thereof met or equaled the severity of any presumptively disabling impairment in the regulations. (R. 14). He specifically considered listings §§ 12.04, 12.05, 12.06, and 12.11, but found Plaintiff did not meet the criteria for those impairments because he only suffered from moderate limitations in "[u]nderstanding, remembering, or applying information," marked limitations in "interacting with others," moderate limitations in "concentrating, persisting, or maintaining pace," and moderate limitations in "adapting or managing oneself." (R. 15—16). Nor was Plaintiff "capable of only marginal adjustment," *i.e.*, "minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life." (R. 16).[3]

Next, the ALJ considered evidence of Plaintiff's impairments, symptoms, and limitations to determine his RFC. The evidence the ALJ considered included Plaintiff's alleged symptoms and limitations, objective medical evidence, activities of daily living, and medical opinion evidence. (R. 17—19). Plaintiff alleged that it was difficult for him to "follow[] instruction," "pay attention," and "handle stress and changes in routine." (R. 17). He particularly disliked

---

[3] To qualify for one of the identified listings, a claimant must suffer from two marked or one extreme limitation in four functional areas. *See e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04B. In the alternative, a claimant may show, *inter alia*, that he was only capable of marginal adjustment. *Id.* § 12.04C. The ALJ found Plaintiff did not demonstrate disability pursuant to listing § 12.05 because intelligence testing did not reveal a sufficient intellectual deficit. (R. 16—17).

"be[ing] around other people." (R. 17). Plaintiff's mental health records indicated that he had received mental health treatment since childhood, but "continued to exhibit significant mental health symptoms." (R. 18). Mental health records also indicated that Plaintiff's concentration had improved with effective medication management. (R. 18). By the time of the hearing, Plaintiff's most significant "barrier to employment" was his social anxiety. (R. 18).

      The ALJ considered this evidence and sought to reconcile it with other evidence in the record, like Plaintiff's daily activities. Despite Plaintiff's social anxiety, evidence of Plaintiff's daily activities indicated that he "regularly [went] to church, friends' homes, and the YMCA community center." (R. 18). Plaintiff also appeared to use public transportation. (R. 18). Plaintiff found public transit confusing but did not indicate it triggered or exacerbated his social anxiety symptoms. (R. 18). In addition to these daily activities, the ALJ further considered the varying medical opinion evidence in the record. The ALJ found that State agency psychological consultant, Dr. Brentzel, understated the severity of Plaintiff's social anxiety and afforded her opinion some weight. (R. 19). He afforded limited weight to the opinion provided by Plaintiff's treating psychiatrist, Dr. Gladowski. (R. 19). Dr. Gladowski opined very significant limitations, but the ALJ found his opinion lacked internal consistency and consistency with the larger record. (R. 19). The ALJ also considered the opinion provided by consultative examiner, Dr. Newman. (R. 19). He afforded Dr. Newman's opinion "great weight" because Dr. Newman's findings of "marked" difficulty in Plaintiff's interactions with others and "moderate" difficulty "understanding, remembering, and carrying out simple instructions" appeared to be "consistent with and well supported by the objective medical evidence." (R. 19).

      Having considered this evidence, the ALJ found Plaintiff's allegations of functional limitation were not totally supported by the record, but he accommodated Plaintiff's established

limitations by restricting Plaintiff to work that involved only "simple and routine tasks," "simple work-related decisions," "occasional interaction" with supervisors and coworkers, "incidental or cursory contact with the public" and "positions that involve working with things rather than people." He also limited Plaintiff to operating in "low stress work environment[s]" without "assembly line" or "strictly-enforced production quotas," and only "occasional changes in work setting." (R. 17). Using that RFC determination, as well as Plaintiff's age, education, and work experience, the ALJ found at step five[4] that Plaintiff could work as an "industrial sweeper/cleaner," "housekeeper/cleaner," or "addresser." (R. 20).

## IV. Legal Analysis

Plaintiff argues the ALJ's decision is contrary to law and unsupported by substantial evidence, primarily because the ALJ failed to appropriately consider the medical opinion evidence in the record. Plaintiff argues that the ALJ overlooked an important component of the consultative examiner's opinion and that his treating psychiatrist's opinion should have been afforded greater weight. Having considered the ALJ's decision and the record, the Court finds that the ALJ's explanation of his consideration of the medical opinion evidence lacks clarity and will order remand.

The primary deficiency in the ALJ's consideration of the medical opinion evidence is his discussion of the consultative examiner's opinion. An ALJ must consider all medical opinion evidence that appears in the record. 20 C.F.R. § 416.927(c). If the ALJ intends to reject opinion evidence, he must acknowledge the rejected evidence and explain the basis of its rejection. *Cotter*, 642 F.2d at 705. Consultative examiner Dr. Newman evaluated Plaintiff in December

---

[4] The ALJ determined at step four that Plaintiff did not have adequate work history to be found capable of returning to prior relevant work. (R. 20).

2016.  (R. 354).  The ALJ considered Dr. Newman's opinion and afforded it "great weight" because Dr. Newman's findings that Plaintiff had a "marked degree of difficulty" with social interaction and a "moderate degree of difficulty understanding, remembering, and carrying out simple instructions [was] both consistent with and well supported by the objective medical evidence."  (R. 19).  However, the ALJ problematically failed to acknowledge that Dr. Newman found another marked limitation.  That additional limitation—a marked limitation in "[r]espond[ing] appropriately to usual work situations and to changes in a routine work setting"—is relevant to Plaintiff's work ability, thus, its oversight is error.  (R. 359).[5]

      This error is particularly problematic in light of the vocational expert's ("VE") testimony at Plaintiff's hearing.  At Plaintiff's hearing, the VE testified in one instance that an individual as limited as Dr. Newman believed Plaintiff to be could not work.  Plaintiff's counsel asked the VE how a marked limitation in interacting with others or appropriately responding to work situations and changes in work setting would affect employability.  (R. 508).  Plaintiff's counsel defined the term "marked" for the VE as "a substantial loss in the ability to effectively function."  (R. 508).  That definition overlapped with Dr. Newman's operative definition of "marked."  (R. 358

---

[5]     The Commissioner points out that a markedly limited ability to appropriately respond to work situations and changes in work setting is not necessarily work preclusive.  (Doc. No. 18, pg. 20).  Indeed, "[c]ourts have found a claimant is not disabled even when a provider finds a marked limitation in responding to work pressures if the ALJ has accounted for the limitation and addressed the limitation in the RFC assessment."  *Norr v. Berryhill*, No. CV 17-2701, 2018 WL 8666579, at *6 (E.D. Pa. Nov. 6, 2018), report and recommendation adopted, No. CV 17-2701, 2019 WL 2721137 (E.D. Pa. June 27, 2019).  However, the error the Court here identifies is not that the ALJ's RFC determination fails to accommodate Plaintiff's limitations, but that the ALJ failed to address clearly probative evidence.  All "pertinent or probative" evidence in the record must be addressed in an ALJ's decision unless that evidence is so overwhelmed by other evidence that it becomes "irrelevant."  *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Having reviewed the record, the Court has not found evidence that so overwhelmingly shows Plaintiff can appropriately respond to work situations and changes in work setting that Dr. Newman's opinion to the contrary is rendered irrelevant.

(indicating "marked" means "[t]here is a serious limitation in this area. There is a substantial loss in the ability to effectively function.")). In response to Plaintiff's counsel's inquiry, the VE testified that an individual with marked limitation interacting with others and responding appropriately to work situations and changes would not be able to work full time. (R. 508).

The Commissioner argues that remand is unnecessary because the VE's understanding of the term "marked" was inconsistent with Dr. Newman's definition of that term. The Court acknowledges that the testimony the VE gave after her initial response to Plaintiff's counsel's question cast some doubt on whether she based her answer on the operative definition of "marked." When Plaintiff's counsel asked the VE to explain her rationale, the VE replied: "So you're saying they're *unable* to effectively deal with other people." (R. 508 (emphasis added)). Plaintiff's counsel did not redirect the VE to the "substantial loss" definition of marked, and later asked "[i]f the person *didn't have the ability* to do, to make those adjustments when they did occur, would that be work preclusive as well?" (R. 509 (emphasis added)). The VE responded "That would, yes." (R. 509). This exchange between Plaintiff's counsel and the VE obfuscates her initial testimony concerning "marked" limitations. However, the Court is not persuaded that the lack of clarity surrounding the VE's testimony mollifies the ALJ's error in failing to address all of Dr. Newman's opined limitations. In the absence of clarity, the Court will remand for further agency consideration rather than attempt to "rectify" shortcomings in the ALJ's analysis. *See Cefalu*, 387 F. Supp. 2d at 491.[6]

---

[6]     Affirmance by application of the harmless error doctrine is not appropriate where, as here, the Court lacks confidence that the same result will be reached after further proceedings. *Rutherford*, 399 F.3d at 553; *Spiva*, 628 F.3d at 353. The Court does not mean to suggest that consideration of Dr. Newman's entire opinion will lead to a different result. However, the Court lacks conviction that the ALJ's error had no impact on the case.

Plaintiff also argues that the ALJ erred in affording only limited weight to his treating psychiatrist's opinion. He contends that the ALJ's reasons for affording Dr. Gladowski's opinion only limited weight were contrary to law and factually inaccurate, and further argues that had the ALJ appropriately considered that opinion Plaintiff would have found disabled at step three. Plaintiff filed his application for SSI before March 27, 2017, so the ALJ's consideration of treating source opinion evidence was subject to 20 C.F.R. § 416.927.

Pursuant to the applicable regulations, ALJs must consider every medical opinion.[7] Treating source opinion evidence is given priority, potentially unto the point of being afforded controlling weight. 20 C.F.R. § 416.927(c)—(c)(2).[8] However, the preference afforded treating

---

[7] In their consideration of various opinions, ALJs consider the source's "[e]xamining relationship," "[t]reatment relationship," how long and how frequently they have worked with the claimant, the nature of the relationship (*e.g.*, whether the source treats the claimant for the relevant impairment), whether there is evidence supporting the opinion, whether the opinion is consistent with the record as a whole, the source's "[s]pecialization," and other appropriate factors. *Id.* § 416.927(c)(1)—(6).

[8] Treating source opinion evidence is valued because treating sources often see claimants frequently and may have a "detailed, longitudinal picture of" a claimant's health impairments. *Id.* § 416.927(c)(2). Treating source opinions are afforded "controlling weight" when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." *Id.*

Plaintiff cites Social Security Ruling 96-2P in support of his argument that the ALJ's consideration of his treating psychiatrist's opinion was afforded inadequate weight. (Doc. No. 16, pg. 3). The Commissioner counters that SSR 96-2P was rescinded effective March 27, 2017 for all pending cases and is therefore inapplicable to the current case. (Doc. No. 18, pg. 18). The Court notes, as have others, that "the rescission of the Ruling is effective only for claims filed after March 27, 2017." *Burton v. Saul*, No. CV 19-2508, 2020 WL 3447752, at *7 n.24 (E.D. Pa. June 24, 2020); *Rosa v. Berryhill*, No. 2:16-CV-5923, 2018 WL 1442893, at *8 n.9 (E.D. Pa. Jan. 31, 2018), report and recommendation adopted, No. CV 16-5923, 2018 WL 1426964 (E.D. Pa. Mar. 22, 2018) ("Because Rosa applied for benefits prior to the effective date of the rescission," March 27, 2017, "SSR 96-2p controls."). *See Gatto v. Comm'r of Soc. Sec.*, No. 3:19-CV-12408(BRM), 2020 WL 5810567, at *6 (D.N.J. Sept. 30, 2020) (considering the treating physician rule for a 2015 disability insurance benefits claim and explaining that "[t]he Commissioner counters that SSR 96-2p is inapplicable as it was rescinded for all pending claims as of March 27, 2017," but "[t]he Court disagrees.").

source opinion evidence is not absolute—"[w]here . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)); *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) ("As the ALJ clearly explained why she gave greater weight to the opinion" offered by the medical expert who testified at the claimant's hearing than the opinion of the claimant's treating psychiatrist, "her decision was supported by substantial evidence and was not contrary to law.").[9] When ALJs do not afford controlling weight to treating source medical opinion evidence, they are directed to consider the factors that are appropriate in the consideration of any medical opinion. 20 C.F.R. § 416.927(c)(2).

Dr. Gladowski started treating Plaintiff shortly before he documented an opinion of Plaintiff's functional limitations. (R. 444). Dr. Gladowski's initial mental status evaluations indicate Plaintiff was appropriately oriented and engaged, with good insight and judgment. (R. 445).[10] In October 2018, Dr. Gladowski opined as to the extent of Plaintiff's symptoms and limitations on an "ASSESSMENT OF ABILITY TO DO WORK-RELATED ACTIVITIES (MENTAL)" form. (R. 460). Therein, Dr. Gladowski wrote that Plaintiff had "[n]o useful

---

[9] Whatever weight is given, ALJs must provide "good reasons in . . . [the] decision for the weight [they] give [the claimant's] treating source's medical opinion." 20 C.F.R. § 416.927(c)(2).

[10] Dr. Gladowski's August 2018 notes indicate Plaintiff was "oriented to date, place and person," "calm and pleasant throughout the interview," "engaged throughout the interview" with "appropriate gestures and facial expressions," and demonstrated appropriate insight and judgment despite indicating his mood was "swingy." (R. 445). At his September 2018 appointment, Plaintiff indicated his medication worked well until approximately 5:00pm, and he further indicated that his "mood ha[d] been 'off an[d] on' stating he has been having arguments with his girlfriend or his mother lately." (R. 443). Dr. Gladowski evaluated Plaintiff's mental status and found him to be "appropriately, [sic] calm, and pleasant" as well as "engaged throughout [the] interview" with "appropriate gestures with speech." (R. 443).

ability to function" for "[r]elat[ing] to co-workers," "[d]eal[ing] with the public," and "[i]nteract[ing] with Supervisor(s)." (R. 460). He opined Plaintiff would be "unsatisfactory" in his ability to "[u]se judgment," "[d]eal with work stresses," and "[m]aintain attention/concentration." (R. 460). He further indicated Plaintiff's ability to "[u]nderstand, remember, and carry out complex job instructions," as well as "[r]elate predictably in social situation[s]" would be "[s]eriously [l]imited." (R. 461). Dr. Gladowski explained that the basis of his opinion was Plaintiff's ADHD, anxiety disorder diagnoses, and "[e]xtreme difficulties interacting with co-workers and supervisors if any stressors are introduced." (R. 461).

Dr. Gladowski also completed a "Mental Impairment Questionnaire (Listings)," wherein he opined that Plaintiff suffered from a "[m]arked" limitation "[i]nteracting with [o]thers" and "[c]oncentrating, persisting or maintaining pace." (R. 464). That form defined "[m]arked" limitation as a "degree of limitation . . . such as to seriously interfere with the ability to function independently, appropriately and effectively." (R. 464). The form offered Dr. Gladowski the opportunity to find an "[e]xtreme" limitation, defined as being "not able to function in [an] area independently, appropriately, effectively, and on a sustained basis." (R. 464).

The ALJ afforded Dr. Gladowski's opinion "limited weight" despite recognizing that he was Plaintiff's treating psychiatrist. (R. 19). The ALJ explained that he found Dr. Gladowski's opinion lacked internal consistency insofar as Dr. Gladowski opined Plaintiff would suffer from "extreme difficulties interacting with coworkers and supervisors" on one form and only marked difficulty on the other. (R. 19). He also found Dr. Gladowski's opinion lacked consistency with the broader record and explained that Dr. Gladowski's findings concerning Plaintiff's difficulty "with concentration, persistence, and pace" were inconsistent with treatment notes indicating Plaintiff's "concentration improved with treatment." (R. 19).

The ALJ's consideration of Dr. Gladowski's opinion is, in several respects, sound. The ALJ provided an explanation for why he afforded the opinion only limited weight. His second reason for that finding—that Dr. Gladowski's opinion was inconsistent with treatment notes—would satisfy a reasonable mind, as Dr. Gladowski's treatment notes do indicate that Plaintiff's concentration was adequate with appropriate medication.[11] Thus, the ALJ's inference of inconsistency is supported by substantial evidence in the record. *Raglin v. Massanari*, 39 F. App'x 777, 778 (3d Cir. 2002) (citing *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190–91 (3d Cir. 1986)) ("We must give deference to the agency's 'inferences from facts if those inferences are supported by substantial evidence, even where this court acting *de novo* might have reached a different conclusion.'").

However, on remand the ALJ's decision in this regard would benefit from reexamination and further explanation of the internal inconsistency finding. The ALJ found the opinion lacked internal consistency because Dr. Gladowski noted an extreme limitation interacting with others on one form and a marked limitation on the other. But the ALJ failed to acknowledge that on one of those forms the term "Extreme" was defined (R. 464), while on the other it was not. (R. 461). There thus appears to be a missing inferential step between the ALJ's consideration of Dr. Gladowski's opinion and the ALJ's finding of internal inconsistency. *See Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (explaining that the ALJ must explain how the evidence is connected to the result). On remand, the ALJ should further consider and explain his consideration of Dr. Gladowski's opinion consistent with the regulations at 20 C.F.R.

---

[11]   R. 442 (noting that Plaintiff's "concentration has improved greatly"), R. 441 (Plaintiff reporting that his "concentration is still low in the afternoon"), R. 443 (noting Plaintiff's report that Adderall is good for his concentration until around 5:00pm), R. 444 (Plaintiff reporting that Adderall prescription helps him "focus and accomplish the things he needs to").

§ 416.927(c)(2). Upon reconsidering opinion evidence in the record pursuant to this order, the ALJ should also address how that further inquiry affects his consideration of the other relevant evidence in the record such as Plaintiff's testimony and the objective medical evidence.[12]

In the briefs, the parties debated several issues that did not appear to factor into the ALJ's decision, such as the length of Dr. Gladowski's treating relationship with Plaintiff. The Court need not address those arguments because its focus is on the ALJ's actual bases of decision. *Middleton v. Colvin*, No. 2:15-CV-1419, 2016 WL 244930, at *1 (E.D. Pa. Jan. 21, 2016) ("[T]he reviewing court must consider only the rationale articulated in the agency's decision.").

---

[12] Plaintiff offers several other arguments for remand, which the Court finds unpersuasive. Plaintiff argues that the ALJ erred in his consideration of Plaintiff's activities of daily living. In the decision, the ALJ considered that despite Plaintiff's allegations of significant limitations due to symptoms of social anxiety, Plaintiff "regularly [went] to church, friends' homes, and the YMCA," and used public transportation without noting "difficulty being around other riders." (R. 19). Based on those activities and the other evidence, the ALJ determined that "a more restrictive residual functional capacity" than the one adopted was unwarranted. (R. 19). Plaintiff challenges this analysis, arguing that his daily activities were too irregular and insufficiently related to work activities to count against the alleged severity of his symptoms and resultant limitations.

The Court discerns no error in the ALJ's consideration of Plaintiff's daily activities. A claimant's daily activities are relevant to the ALJ's assessment of functional limitations. *See* 20 C.F.R. § 416.929(c)(3)(i). So too is consistency among a claimant's statements concerning how their symptoms affect them. SSR 16-3P, 2017 WL 5180304, *4, 6 (S.S.A. Oct. 25, 2017). In this instance, the ALJ considered that Plaintiff "consistently reported having difficulty being around other people," especially when they were critical of him or when multiple people gave him "instructions at the same time." (R. 18). But further considered that Plaintiff voluntarily engaged socially at church, friends' homes, and the YMCA. (R. 18—19). Where, as here, Plaintiff primarily alleged functional limitations due to social anxiety, evidence of social engagement was highly relevant to Plaintiff's RFC. Therefore, the ALJ did not err in considering Plaintiff's daily activities.

Plaintiff also argues the ALJ failed to adequately develop the record. However, there is no indication in the record or decision that the ALJ felt he lacked sufficient evidence to make a disability determination but proceeded anyway. Therefore, there was no reason for the ALJ to recontact medical sources and further develop the record before making a decision. 20 C.F.R. § 416.920b(b).

13

## V. Conclusion

For the foregoing reasons, the Court finds the ALJ's decision is not supported by substantial evidence. Further administrative proceedings are necessary to permit additional consideration and explanation of the medical opinion evidence of record. Further consideration of the medical opinion evidence may affect not only the ALJ's determination of Plaintiff's RFC, but also the ALJ's decision at step three of the five-step sequential evaluation. The Court points this out only to ensure that any decision arising from further proceedings is sufficiently detailed to permit meaningful review and does not in any way speculate as to what the result of further proceedings might be. Accordingly, the case is remanded to the Commissioner for reconsideration consistent with this Order.

s/ Alan N. Bloch  
United States District Judge

ecf:   Counsel of record